# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

# STATE OF MAINE.

---

INHABITANTS OF HUDSON *vs.* INHABITANTS OF CHARLESTON.

Penobscot.    Opinion October 30, 1902.

*Pauper.   Collusive Marriage.   Evidence.   R. S., c. 24, § 1.*

In a pauper suit, in order to prevent the operation of the rule that a wife takes the settlement of her husband, the plaintiff town contended that the marriage of the pauper was procured through the agency of the selectmen of the defendant town, and that consequently her settlement was not changed thereby, but remained in the defendant town.

*Held;* that the testimony offered by the plaintiff town tending to show the admissions made by the municipal officers of the defendant town, and their narrations of past transactions, or statements in relation to pre-existing facts, is not competent evidence to prove their agency in procuring this marriage; but any declarations made by these officers accompanying their official acts in the premises and tending to explain them are admissible.

The principle upon which such evidence is admitted is, that the statement testified to is a verbal act illustrating or interpreting other parts of the transaction; that the declaration is essentially contemporaneous with the principal fact, and so far characterizes it as to be in a just sense a part of it.

*Held;* that the testimony showing the conduct and accompanying declarations of two of the selectmen and overseers of the poor of the defendant town, and of a constable of that town, acting under their authority, was sufficient, if believed, to warrant the jury in finding that the marriage of the pauper in question was procured by the agency of the town officers of the defendant town.

VOL. XCVII 2

If the facts and circumstances surrounding these parties, as disclosed by the evidence, operated effectually to induce the marriage by means of their own weight and influence upon the minds of the parties without active interference by the municipal officers, the defendant town obviously could not be held chargeable with the result thus produced. But if the municipal officers of the town made use of the facts of the situation, either by way of advice, argument, persuasion or inducement, to induce the marriage for the purpose of changing the settlement, in such a sense that but for such act of the municipal officers the marriage would not have taken place, then the marriage was procured by the agency of the municipal officers to change the settlement.

Motion by defendant.    Overruled.

Action to recover pauper supplies, in which the jury rendered a verdict for the plaintiff.

The verdict for the plaintiff at a former trial was set aside by the law court, no opinion by the court having been rendered.

The case appears in the opinion.

*P. H. Gillin, T. B. Towle, J. H. Burgess and W. B. Peirce,* for plaintiff.

*L. C. Stearns and H. H. Patten,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   This is an action to recover the expense incurred for pauper supplies furnished to Clara L. Curtis, wife of Calvin L. Curtis.   Her maiden name was Clara L. Tozier, and it was not in controversy that at the time of her marriage to Curtis, October 30, 1899, her pauper settlement was in the defendant town, and that the pauper settlement of Calvin L. Curtis was in the town of Alton.   It was not in controversy that prior to and at the date of her marriage, Clara L. Tozier was a pauper receiving support from the defendant town.

It is provided in § 1 of c. 24, R. S., that "a married woman has the settlement of her husband if he has any in this state;" but it is further provided in the same section that "when in a suit between towns involving the settlement of a pauper it appears that a marriage was procured to change it by the agency or collusion of the officers

of either town, or of any person having charge of such pauper under authority of either town, the settlement is not affected by such marriage."

In order to prevent the operation in this case of the rule that a wife takes the settlement of her husband, the plaintiff town invoked the latter provision of the statute, contending that the marriage was procured through the agency of the selectmen of the defendant town, and that consequently the settlement of Clara L. Curtis was not changed thereby, but remained in the defendant town.

This issue has been twice presented to a jury, the trial in each instance resulting in a verdict for the plaintiff. It now comes to this court a second time on a motion to set aside the verdict as against the evidence.

It would not be expected that municipal officers, who were meditating a fraudulent practice for the purpose of relieving their town of a burden imposed by the pauper statute, would publicly declare their intention or openly employ active measures to accomplish their purpose. Evidence of explicit directions and positive utterances to induce a collusive marriage would not ordinarily be available. Indirection and concealment might be expected to characterize all efforts and proceedings to consummate the forbidden scheme, where exposure would at once destroy the advantage to be gained by it. In such a case, as well as in all similar inquiries, the proposition involved may be established by circumstantial as well as by direct evidence. The agency of the town officers may be deduced by the process of special inference, by means of the probabilities arising from established facts examined in the light of experience and observation.

The testimony offered by the plaintiff town tending to show the admissions made by the municipal officers of Charleston, and their narrations of past transactions, or statements in relation to pre-existing facts, was not competent evidence to prove their agency in procuring this marriage; but any declarations made by these officers accompanying their official acts in the premises and tending to explain them were admissible. *Corinna* v. *Exeter*, 13 Maine, 321; *Smyth* v. *Bangor*, 72 Maine, 249. The principle upon which such evidence is admitted is that the statement testified to is a verbal act

illustrating or interpreting other parts of the transaction; that the declaration is essentially contemporaneous with the principal fact, and so far characterizes it as to be in a just sense a part of it. *Barnes* v. *Rumford*, 96 Maine, 316.

After a careful examination of all the evidence now in the case, it is the opinion of the court that the testimony showing the conduct and accompanying declarations of Charles Tilton and Charles F. Tibbetts, two of the selectmen and overseers of the poor of the defendant town, and of David O. Pearl, a constable of that town, acting under their authority, was sufficient, if believed, to warrant the jury in finding that the marriage of the pauper in question was procured by the agency of the town officers of Charleston.

At the time of her marriage to Curtis, Clara L. Tozier was twenty years of age and the mother of three illegitimate children, the youngest being then about three months of age. She had received support as a pauper from the defendant town for three years prior to that time. Curtis was sixty-three years old, and had himself received assistance as a pauper from the town of Alton. Clara was at Tilton's residence May 9th, 1899, and went from his home to the poor-house in Charleston, remaining there three or four weeks. She was then allowed to go to the house of her brother, Charles Tozier, in Hudson, upon her promise not to incur any expense on account of the defendant town; and there, sometime in July, she gave birth to her third illegitimate child. September 12 following, the intentions of marriage of Clara L. Tozier and Calvin L. Curtis were recorded by the town clerk of Charleston pursuant to the directions contained in a letter purporting to be signed by Calvin L. Curtis. Unfortunately this letter was lost before the trial and no aid has been derived from the handwriting, but the plaintiff contends that errors in the vital statistics furnished, in connection with other significant circumstances, clearly indicate that the letter was prepared by some other hand than that of Calvin Curtis.

But the marriage was not solemnized as promptly as may have been expected, and the evidence tends to show that on the tenth day of October, Tilton and Tibbetts, receiving notice that Hudson had been called upon to pay Clara's bills, both went to the house of

Charles Tozier in Hudson, where Calvin Curtis and Clara then were, and informed Clara that she must go back to the poor-house; but she protested with so much feeling that they "concluded to try her two weeks longer," and before they left they told her, as the plaintiff contends, that if she was not married in two weeks they would send a constable who would take her back to the town farm. Thereupon she left Hudson and went to the house occupied by Calvin Curtis in West Oldtown, to serve as housekeeper for him, taking the children with her. But two days later Curtis brought the youngest child to Tilton's house, and it was thence taken by Tilton to the poor-house.

October 26 the same town officers issued a warrant to constable Pearl for the removal of Clara and her second child to the poor-house. Ostensibly in execution of this warrrant Pearl proceeded to West Oldtown and found that Curtis seemed at first unwilling to marry Clara. Pearl then stated to the magistrate in the presence of both Curtis and Clara that "he was going to see them married before he returned, or she was going with him." Curtis then said if Pearl would drive to Alton and obtain his certificate from the town clerk and "loan" him the money to pay the bills he would be married that night. Pearl complied, went to Alton with Clara and obtained the certificate, was present at the "wedding" and "loaned" Curtis $2.50 to pay the fees. For these services he received a town order for nine dollars, a sum considerably in excess of legal fees for serving the warrant. These facts justified the inference that Pearl had oral instructions from the town officers in addition to the command in the "warrant."

Edward J. Buzzell, a resident of the defendant town, testified that Tilton asked him if he knew Calvin Curtis of West Oldtown and added that Clara Tozier was down there at Curtis's house and "they would give twenty-five dollars to get rid of her." It was shown in defense that Buzzell's reputation for truth was bad and that he had threatened to have revenge against the town for refusing to pay his bill for labor on the road. But Tilton, while denying that he offered to pay Buzzell any money, admits that a conversation occurred between them in relation to the marriage in which Buzzell said he

thought that "while he was going back and forth, if a little time was put in he could get them married off." If this version of the interview be accepted as the correct one, the inference is still irresistible that Buzzell would not have volunteered even that suggestion without good reason to believe that it was in harmony with Tilton's desire and purpose. Buzzell's road bill was paid by the town before the second trial of this case.

Finally, it appears that at the former trial Tilton had testified positively that he was never at Curtis's house or door-yard in West Oldtown in his life, and in effect made the same statement at the second trial. But at the last trial three witnesses testified positively that they saw him and recognized him in West Oldtown about two weeks before the marriage, and two of them state that they saw him in Curtis's door-yard. One other witness recognized Tilton's team in Curtis's door-yard ten days or two weeks before the marriage. Notwithstanding Tilton's denial, this evidence was sufficient to warrant the conclusion that he was at Curtis's house about the time named; and that fact being established, Tilton's false denial of it justified the inference on the part of the jury that his presence there was incapable of any explanation consistent with his innocence.

If the facts and circumstances surrounding these parties, as disclosed by the foregoing statement, operated effectually to induce the marriage by means of their own weight and influence upon the minds of the parties without active interference by the municipal officers, the defendant town obviously could not be held chargeable with the result thus produced. But as stated by the court in *Minot* v. *Bowdoin*, 75 Maine, 205, "if a municipal officer of the town made use of the facts of the situation, either by way of advice, argument, persuasion or inducement, made use of any means to induce the marriage for the purpose of changing the settlement, in such a sense that but for such act of the municipal officer the marriage would not have taken place, if such a state of facts is shown, then the marriage was procured by the agency of the municipal officers to change the settlement."

In the case at bar two juries have found that the marriage was so procured by the agency of the municipal officers, and we cannot

say that their conclusion was so unmistakably wrong as to justify the court in setting aside this verdict.

*Motion overruled.*